# CALIFORNIA ARTIFICIAL STONE PAVING COMPANY *v.* MOLITOR.

IN ERROR TO THE CIRCUIT COURT OF THE UNITED STATES FOR THE DISTRICT OF CALIFORNIA.

## SAME *v.* SAME.

APPEAL FROM THE SAME COURT.

Submitted November 25, 1884.—Decided March 2, 1885.

A certificate of division of opinion under § 652 Rev. Stat., can be resorted to only when "a question" has occurred on which the judges have differed, and where "the point" of disagreement may be distinctly stated.

It cannot be resorted to for the purpose of presenting questions of fact, or mixed questions of fact and law, or a difference of opinion on the general case.

When there is reasonable ground to doubt as to the wrongfulness of the conduct of a defendant in a suit in equity to prevent the infringement of a patent, the process of contempt should not be resorted to to enforce the plaintiff's rights.

Plaintiff obtained a decree in equity against defendant as an infringer of plaintiff's rights under a patent for an improvement in pavements. Defendant continued to lay pavements. Plaintiff proceeded against him for contempt, alleging that he was still using plaintiff's process. Defendant denied the allegation, and answered that he was using a process different from that which had been adjudged to be an infringement. On this question there was a division of opinion in the court below. *Held*, That the process of contempt is not an appropriate remedy.

This was a suit to enjoin against the use of a patented invention and for an order to show cause why defendant should not be punished for contempt. The facts which make the case are stated in the opinion of the court.

*Mr. M. A. Wheaton* for plaintiff in error and appellant.

*Mr. John L. Boone* and *Mr. E. M. Marble* for defendant in error and appellee.

MR. JUSTICE BRADLEY delivered the opinion of the court.

A bill was filed by the appellant in this case against the appellee, complaining that the latter had infringed, and continued to infringe, certain letters patent granted to one John J. Schillinger, and which had been assigned for the State of California to the complainant. The patent was for an improvement in concrete pavement, and was originally issued July 19, 1870, and reissued May 2, 1871. The improvement, as described in the reissued patent, consisted in laying the pavement in detached blocks, separated from each other by strips of tar-paper, or other suitable material, so as to prevent the blocks from adhering to each other. As stated in the specification, "the paper constitutes a tight water-proof joint, but it allows the several blocks to heave separately from the effects of frost, or to be raised or removed separately, whenever occasion may require, without injury to the adjacent blocks." Prior to this invention, it seems, from the statement of facts

made by the court, that concrete pavements had been made in one continuous sheet, without being divided into blocks, whence they were liable to crack in irregular directions, and to break up in such a manner as to render them useless. The specification of the reissued patent contained the following clause: " In such cases, however, where cheapness is an object, the tar-paper may be omitted, and the blocks formed without interposing anything between their joints as previously described. In this latter case the joints soon fill up with sand or dust, and the pavement is rendered sufficiently tight for many purposes, while the blocks are detached from each other, and can be taken up and relaid, each independent of the adjoining blocks:" but this clause had been disclaimed by filing a disclaimer in the Patent Office. The patent had two claims, as follows:

" 1. A concrete pavement laid in detached blocks or sections, substantially in the manner shown and described.

" 2. The arrangement of tar-paper, or its equivalent, between adjoining blocks of concrete, substantially as and for the purposes set forth."

The defendant answered the bill, denying the validity of the patent and denying infringement, and declaring that the concrete pavements made by him were made under and in accordance with certain letters patent granted to one J. B. Hurlburt, April 20, 1875, the process of which is described in the answer, as follows :

" The said Hurlburt invention is a novel method of forming blocks of artifical stone or cement pavement, whereby they are prevented from becoming uneven by sinking below or rising above a common plane, and consists in bevelling the edges of the blocks so that they will measure more across their under side in one direction and less across their upper side than across their under side in the other or opposite direction ; and also consists in the novel construction of a forming frame whereby the blocks are bevelled as devised by using the different sides of the frame alternately ; and also in the novel construction of a parting strip, whereby the colors are kept separate, showing a straight line between the blocks and while forming their edges

in actual contact, the same strip being of great service to rest a straight edge upon while bevelling the block in process of formation, and that by said invention the process of laying cement pavements saves from 10 to 15 per cent. in cost of labor over any other known process, entirely dispenses with tar-paper or any equivalent and all other expensive superfluities, and makes a close-bevelled joint, it being impossible to raise, or attempt to raise, any separate piece of work without chiselling and digging and materially injuring adjacent work."

What the proof was as to the actual process employed by the defendant, whether it strictly accorded with Hurlburt's plan or not, does not distinctly appear. The appellee's counsel in his brief states that the respondent was originally adjudged to have infringed the rights secured by the patent, by reason of having pressed into the joints made by the cutting of the large sections into blocks with a trowel, a fine concrete which was held to be the equivalent of the tar-paper, as it accomplished the objects claimed to be gained by the patented invention, viz., producing a suitably tight joint and yet allowing the blocks to be raised separately without affecting the block adjacent thereto, and allowed the several blocks to heave separately from the effects of frost. But this fact is not shown by the record before us, and we are in the dark as to what particular form of pavement was adjudged by the court to have been an infringement of the patent sued on. We only know that, proofs having been taken and the cause heard, the Circuit Court, on September 10, 1881, decreed as follows:

"That the reissued letters patent No. 4364, granted and issued on the 2d day of May, A.D. 1871, to John J. Schillinger, of New York, being the patent referred to in the bill of complaint herein, are good and valid in law. . . . That the said defendant, Charles A. Molitor, has infringed said reissued letters patent, and upon the exclusive rights of the complainant under the same, that is to say, by making or selling one or more artificial concrete cement pavements within the State of California, and while the complainant was the owner of said reissued letters patent, as charged in said bill of complaint. . . . And that a perpetual injunction be issued in this suit against the said de-

fendant, Charles A. Molitor, restraining him, his agents, clerks, servants, and all claiming or holding under or through him, from making, selling, or using, or in any manner disposing of any artificial stone-block pavements embracing the invention and improvements described in the said reissued letters patent, pursuant to the prayer of the said bill of complaint."

Had the defendant continued to make concrete pavements in the manner set up in his answer, or in the manner in which it was proved he did make them, and which the court decided to be an infringement, there could have been no doubt that he would have violated the decree; but, it would seem, that he varied his mode of making the pavement by ceasing to make it in separate and detached blocks, and only making a mark or indentation on the surface whilst in a plastic state with a trowel or marker extending to a depth of from one-eighth of an inch to an inch, and thus giving the pavement the appearance of being made in detached blocks, and, in fact, answering all the purposes of detached blocks, the crease on the surface being sufficient to produce the results obtained by Schillinger's process.

In October, 1883, more than two years after the decree was entered, the complainant obtained a rule on the defendant to show cause why he should not be punished for a contempt of court in disobeying the decree; the alleged contempt consisting of the construction by the defendant of concrete pavements in the manner last mentioned, to wit, at Redwood City, in San Mateo County. Of course, the question was at once raised whether the process now used by the defendant was an infringement of the patent. The judges being opposed in opinion, a decree was made in conformity with that of the Circuit judge, declaring that the pavements thus constructed by the defendant did not infringe the patent, that there was no violation of the injunction, and that the order to show cause be discharged. A certificate was thereupon made, showing the points on which the judges disagreed, and the cause has been brought here both by appeal and by writ of error—brought in both ways, as counsel state, because of the uncertainty as to which was the right method.

For the purpose of showing how the points of disagreement arose, and of furnishing materials for deciding them, the cirtificate exhibits the record and facts upon which (it is stated) the matter was heard below, consisting of—

1st. The bill, answer, replication, decree and injunction, and the order to show cause why the defendant should not be punished for contempt.

2d. A statement of facts deduced by the court below from the evidence in the case, and the report of a master. This statement embraces a copy of the reissued patent of Schillinger, with the drawings annexed thereto, and a statement deduced from the testimony, describing amongst other things, the manner in which the defendant, after the entry of the decree, constructed a certain pavement in Redwood City, to wit, substantially as before mentioned. The statement closes with the following declaration, to wit:

"While the blocks laid in strict accordance with the specifications in the Schillinger patent can be more readily taken up, still the cutting and marking, or the mere marking of the surface with the marker alone, as described, affords, to a very large extent, the advantages mentioned obtained by the use of the Schillinger patent, the additional cutting with the trowel, during the process of formation, to a greater or less extent, increasing those advantages. The Exhibit C, offered as follows, is a photograph of the sidewalk as laid by defendant Molitor, claimed to be an infringement of the patent in question."

The photograph exhibit is annexed to the statement.

The certificate then concludes as follows:

"At the hearing of said order to show cause, at the present term of the court, upon said record, and upon the facts hereinbefore stated, there occurred as questions arising thereon—

"1. Whether the laying of said concrete pavement of plastic material on the ground in the manner stated, and dividing it into smaller blocks upon the surface by cutting across the surface of the larger blocks with a trowel, and afterwards running the marker along the line of the cutting with the trowel, in all respects as hereinbefore stated, constitutes an infringement of the patent to Schillinger set out in this certificate?

"2. Whether the laying of the said concrete pavement of plastic material on the ground in the manner stated, and dividing it into smaller blocks upon the surface, by cutting across the surface of the larger blocks by running the marker, without any other cutting with a trowel or other instrument than the marker described, across the blocks, on a line previously marked, as a guide, in all respects in the manner as hereinbefore stated, thereby controlling the line of cracking, and obtaining in a greater or less degree the advantages pertaining and belonging to the pavements laid in all respects in accordance with the specifications of said Schillinger patent, constitutes an infringement of said patent?

"3. Whether the defendant Molitor, by constructing the said pavement in all respects in the manner hereinbefore stated, is guilty of violating the injunction granted and made perpetual by the decree in this case?

"Upon which said several questions and upon each of them the judges were divided in opinion."

These are the questions which we are now called upon to answer.

We are met, however, at the outset, by a preliminary question, to wit, whether the points thus presented by the certificate of the judges below come within the meaning of the statute which authorizes this court to decide questions of law on which the judges of the Circuit Court are opposed in opinion. It is not a difference of opinion on the general case which may be thus certified. Such a difference would properly result in a decree for the defendant, or party holding the negative, subject to an appeal to this court in the ordinary course. It is only a difference on a special point of law which can be distinctly stated, that may be certified to this court under the statute. § 652 Rev. Stat. declares that when a judgment or decree is entered in a civil suit, in a circuit court held by two judges, in the trial or hearing whereof *any question* has occurred upon which the opinions of the judges were opposed, *the point* upon which they so disagreed shall be stated and certified, &c. The language is copied from the act of April 29, 1802, § 6, 2 Stat. 159, and shows that a certificate can only be resorted to when

"a question" has occurred on which the judges have differed, and where "the point" of disagreement may be distinctly stated. This court has frequently held that the "question" referred to must be a question of law, and must be capable of being presented in a single point. Chief Justice Marshall, in *Wayman* v. *Southard*, 10 Wheat. 1, 20, said : "The law which empowers this court to take cognizance of questions adjourned from a circuit, gives jurisdiction over the single point on which the judges were divided, not over the whole cause." In *Dennistoun* v. *Stewart*, 18 How. 565, the matter is examined with precision. In that case the judges differed in opinion as to the charge which should be given to the jury upon the evidence adduced. The evidence was set forth in the certificate, and the points upon which the judges differed as to the charge to be given were stated. The court, speaking by Mr. Justice Daniel (p. 568), recapitulated the interpretations which had been given to the act in reference to the requisites of its jurisdiction on such certificates. 1. They must be questions of law and not questions of fact—not such as involve or imply conclusions or judgment by the judges upon the weight or effect of the testimony or facts adduced in the cause (referring to *Wilson* v. *Barnum*, 8 How. 258). And the *question* on which the judges differed must be stated; not, whether a demurrer made on several grounds should be sustained (referring to *United States* v. *Briggs*, 5 How. 208). 2. The points stated must be single, and must not bring up the whole case for decision (referring to *United States* v. *Bailey*, 9 Pet. 257; *Adams* v. *Jones*, 12 Pet. 207; *White* v. *Turk*, 12 Pet. 238; *Nesmith* v. *Sheldon*, 6 How. 41; *Webster* v. *Cooper*, 10 How. 54). And, inasmuch as the certificate in that case (*Dennistoun* v. *Stewart*) did not present a single or specific question of law arising in the progress of the cause, but referred to this court the entire law of the case as it might arise upon all the facts supposed by the court, the case was remanded to the Circuit Court to be proceeded in according to law, without any answer to the questions propounded.

The cases and points adjudged on the subject are very fully rehearsed by Mr. Justice Swayne in *Daniels* v. *Railroad Co.*,

3 Wall. 250. That was an action for an injury caused by a collision of railroad cars, and, after reciting the evidence, the certificate stated that this was *all* the evidence, and thereupon it occurred as a question whether, in point of law, upon the facts as stated and proved, the action could be maintained, and whether or not the jury should be so instructed; and, on this question, the judges' were opposed in opinion. The court refused to consider the case, and dismissed the certificate.

The case of *Wilson* v. *Barnum*, 8 How. 258, is especially worthy of note in this connection. The question certified in that case was whether, upon the evidence given, the defendant infringed the complainant's patent. Chief Justice Taney, delivering the opinion of the court, said: "The question thus certified is one of fact, and has been discussed as such in the arguments offered on both sides. It is a question as to the substantial identity of the two machines. . . . The jurisdiction of this court to hear and determine a question certified from the Circuit Court is derived altogether from the act of 1802 [cited above], and that act evidently gives the jurisdiction only in cases where the judges of the Circuit Court differ in opinion on a point of law. . . . In the multitude of questions which have been certified, this court has never taken jurisdiction of a question of fact. And in a question of law it requires the precise point to be stated, otherwise the case is remanded without an answer." Pages 261–2. And the case was remanded for want of jurisdiction.

It seems to us that the certificate in the present case is obnoxious to the objections presented in the cases cited. The new controversy raised by the defendant's construction of the pavement in Redwood City is substantially a new suit on the patent; and we are asked to decide it. We are asked to say whether a pavement constructed in such and such a manner is an infringement of the patent as the Circuit Court has construed the patent. And this is a mixed question of fact and law. By the final decree in the case, made in 1881, the court decided that the pavements which the defendant had been theretofore making did infringe the patent. How those pavements were constructed we are not informed; and therefore

we do not know what was the precise construction given by the court to the patent. Whether the new pavement, constructed in Redwood City, is an infringement or not, is just as much a mixed question of law and fact (as the case is presented to us) as was the question whether the pavements formerly constructed by the defendant were an infringement. It is a question which the Circuit Court must decide for itself in the ordinary way. If the judges disagree there can be no judgment of contempt; and the defendant must be discharged. The complainant may then either seek a review of that decision in this court, or bring a new suit against the defendant for the alleged infringement. The latter method is by far the most appropriate one where it is really a doubtful question whether the new process adopted is an infringement or not. Process of contempt is a severe remedy, and should not be resorted to where there is fair ground of doubt as to the wrongfulness of the defendant's conduct.

*The case must be dismissed, with directions to the Circuit Court to proceed therein according to law.*